United States District Court
Southern District of Texas
**ENTERED**
July 03, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Hil-Tech, LLC d/b/a GTech USA, § | |
| § | |
| *Plaintiff,* § | |
| § | Case No. 4:22-cv-02310 |
| v. § | |
| § | |
| Shree Mahalaxmi Industries; § | |
| Alfa Laval India Pvt. Ltd.; § | |
| Alfa Laval AB; Alfa Laval, Inc.; § | |
| Alfa Laval USA, Inc.; § | |
| Alfa Laval Separation, Inc.; and § | |
| Seaboard Foods Service, Inc., § | |
| § | |
| *Defendants.* § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Multiple motions are pending in this suit over indemnity for costs related to the litigation and settlement of a previous personal injury suit. All were referred to the undersigned judge. Dkt. 71.

Defendants Alfa Laval India Pvt. Ltd. ("AL India") and Alfa Laval AB ("ALAB") filed motions to dismiss under Fed. R. Civ. P. 12(b)(2), asserting that the Court lacks personal jurisdiction over them. Dkt. 50, 72. Plaintiff Hil-Tech, LLC d/b/a GTech USA ("Hil-Tech") sought an extension of time to respond to these motions, asserting a need for jurisdictional discovery, Dkt. 59, 77, but filed responses regardless, Dkt. 61, 76, to which AL India and ALAB

replied, Dkt. 63, 79.  Separately, Hil-Tech has requested discovery for and an evidentiary hearing on both pending motions to dismiss, Dkt. 60, 78; *see also* Dkt. 69 (AL India's opposition).  Later, Hil-Tech filed a notice under Federal Rule of Civil Procedure 41(a)(1)(A)(i) voluntarily dismissing with prejudice its claims against ALAB.  Dkt. 80.

Defendant Seaboard Food Service, Inc. ("Seaboard") also moved to dismiss, but for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Dkt. 49; *see also* Dkt. 54 (Hil-Tech's response); Dkt. 56 (Seaboard's reply).  Hil-Tech filed a motion requesting leave to file another amended complaint, Dkt. 53, as well as an extension of time to do so, Dkt. 52.  Seaboard opposed Hil-Tech's requests.  *See* Dkt. 64 (Seaboard's combined response to Dkt. 52 & 53); *see also* Dkt. 67 (Hil-Tech's combined reply).

After carefully considering the motions, responses, replies, the record, and the applicable law, it is recommended that (a) ALAB's Rule 12(b)(2) motion to dismiss Hil-Tech's claims (Dkt. 72), and Hil-Tech's related motions for extension of time to respond (Dkt. 77) and for jurisdictional discovery and an evidentiary hearing (Dkt. 78) be denied as moot because Hil-Tech has voluntarily dismissed those claims with prejudice (Dkt. 80); (b) AL India's Rule 12(b)(2) motion to dismiss (Dkt. 50) be granted, and Hil-Tech's motions for extension of time to respond (Dkt. 59), and for discovery and a jurisdictional hearing with respect to AL India (Dkt. 60) be denied; and (c) Seaboard's

Rule 12(b)(6) motion to dismiss be granted.[1]  But the Court grants Hil-Tech's motion for leave to amend its Complaint (Dkt. 53) in part, only with respect to the claim for breach of an indemnification agreement.  Hil-Tech's motion for extension of time to file an amended complaint (Dkt. 52) is denied.

## Background

This case arises out of a personal injury action that was filed and resolved in an Oklahoma federal court.  In that prior action, Luis Ortiz claimed he was injured by a defective centrifuge while working at Seaboard's processing plant in Oklahoma.  Dkt. 55 at 2; Dkt. 37 ¶¶ 1.1-1.2.  Based on this Court's findings when resolving prior motions, the centrifuge (1) was manufactured in India by AL India; (2) was "modified by Shree Mahalaxmi Industries ["SMI"], also in India"; (3) "sold to Hil-Tech, a U.S. supplier; and (4) sold to Seaboard, Ortiz's employer in Oklahoma."  Dkt. 55 at 2.

In 2019, sometime after Seaboard had installed the centrifuge, Ortiz was cleaning the bowl portion of the device when it allegedly struck him, causing significant injuries.  Dkt. 37 ¶¶ 4.6, 4.7.  He filed suit in the Western District of Oklahoma against AL India and Hil-Tech, asserting strict liability and negligence claims based on the installation, assembly, operation, maintenance,

---

[1] To the extent still pending, the motion filed by two other defendants, Alfa Laval Inc./Alfa Laval Separation Inc. and Alfa Laval USA Inc., for leave to file a motion to strike Hil-Tech's omnibus response to prior motions to dismiss is denied as moot.  Dkt. 47. The Court previously granted those defendants' motions to dismiss.  Dkt. 55.

and repairs of the centrifuge.  *See Ortiz v. Alfa Laval India Pvt. Ltd.*, 5:19-cv-00869-HE, Dkt. 1 (W.D. Okla. Sept. 18, 2019).  Ortiz later added Seaboard as a defendant, alleging that Seaboard did not safely and correctly assemble, install, maintain, and operate the centrifuge.  *Id.*; Dkt. 24 ¶¶ 28-38 (second amended complaint, filed Apr. 29, 2020).  In the interim, AL India filed a motion to dismiss for lack of personal jurisdiction, *id.*, Dkt. 17 (filed Jan. 23, 2020), which the court granted, *id.*, Dkt. 22 (entered Mar. 20, 2020).  Ortiz settled his suit against the remaining defendants.  Dkt. 37 ¶¶ 1.2-1.3, 4.7.

Hil-Tech then filed this suit in state court, asserting (1) breach of contract claims against SMI and Seaboard; (2) a strict products liability claim against SMI, AL India, and other entities related to AL India: ALAB; Alfa Laval Inc. ("ALI"); Alfa Laval USA, Inc. ("AL USA"), and Alfa Laval Separation, Inc; (3) a negligence claim against all defendants; and (4) indemnification and contribution claims against defendants for costs of defending and settling the Ortiz suit.  Dkt. 1-3 at 10-12.  ALI removed the case to this Court.  Dkt. 1.

Post-removal, Hil-Tech sought and was granted leave to file an amended pleading (the "Complaint").  Dkt. 33 (motion); Dkt. 36 (order); Dkt. 37 (Complaint).  Seaboard filed a motion to dismiss under Rule 12(b)(6), Dkt. 49, to which Hil-Tech responded, Dkt. 54, and Seaboard replied, Dkt. 56.  Each of the "Alfa Laval" entities filed a motion to dismiss under Rule 12(b)(2) for lack

of personal jurisdiction.  Dkts. 5, 7, 8 (motions by ALI, AL USA, and Alfa Laval Separation, Inc.); Dkt. 50 (AL India's motion); Dkt. 72 (ALAB's motion).

This Court resolved ALI, AL USA, and Alfa Laval Separation, Inc.'s motions first.  After an evidentiary hearing, the Court found that Hil-Tech failed to show, by a preponderance of the evidence, that personal jurisdiction exists over those three entities.  Dkt. 55 at 3-5.  As the Court concluded, Alfa Laval Separation, Inc. "has not existed as an entity since 2000."  *Id.* at 2.  And "[o]ther than ALI and AL USA collectively functioning as the United States arm of Alfa Laval and affidavits from the Oklahoma Action which are not before this Court, [Hil-Tech] has no evidence that ALI or AL USA handled the centrifuge through manufacturing, sale, marketing, or otherwise."  *Id.* at 4. There was likewise no evidence "that either AL or AL USA ever had any contacts with the forum state with respect to the centrifuge."  *Id.* at 5.  Based on those findings, the Court granted ALI, AL USA, and Alfa Laval Separation, Inc.'s motions to dismiss.  *Id.* at 5.

In the interim, Hil-Tech requested an extension of time to respond to AL India's and ALAB's motions, Dkts. 59, 77, but proceeded to file responses, Dkts. 61, 76, thereby prompting AL India and ALAB to file replies, Dkts. 63, 79.  Hil-Tech also filed motions requesting discovery for and an evidentiary hearing on these defendants' Rule 12(b)(2) motions to dismiss.  Dkts. 60, 78; *see also* Dkt.

69 (AL India's response).  While the motions to dismiss were pending, Hil-Tech voluntarily dismissed its claims against ALAB.  Dkt. 80.

Hil-Tech also filed a motion for leave to amend its pleading again. Dkt. 53.  Seaboard opposed the requested relief, Dkt. 64, and Hil-Tech filed a reply, Dkt. 67.  Relatedly, Hil-Tech requested that the Court defer the deadline for amending the Complaint until the last foreign defendant, SMI, is served. Dkt. 52 ¶¶ 4.4-4.7.  Seaboard opposed the requested extension.  Dkt. 64 at 4-5.

The Court also requested the parties to submit briefing to confirm whether subject matter jurisdiction exists.  Dkt. 74.  ALAB, AL India, and Seaboard did so, invoking 28 U.S.C. § 1332(a)(3).  Dkt. 75.  Hil-Tech did not dispute that jurisdiction is proper.

## Legal standard

### A.    Personal jurisdiction standard

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction.  When confronted with a Rule 12(b)(2) motion, "the plaintiff bears the burden to identify facts that demonstrate a prima facie case of jurisdiction." *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Relations,* 1 F.4th 346, 350 (5th Cir. 2021); *see also Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013).    A district court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination" thereof to determine if the plaintiff made a prima facie showing. *Revell v. Lidov*, 317 F.3d

6

467, 469 (5th Cir. 2002). The court accepts as true "the nonconclusory, uncontroverted allegations in the plaintiff's complaint" and "resolve[s] conflicts between the facts contained in the parties' affidavits ... in the plaintiff's favor." *Bulkley & Assocs., L.L.C.*, 1 F.4th at 350 (internal quotation marks omitted). But "the prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

## B.   Rule 12(b)(6) standard

Dismissal under Rule 12(b)(6) is warranted if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "the complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56). When resolving a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and view[s] those

facts in the light most favor to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (internal quotation marks omitted).

## Analysis

## I.     Subject matter jurisdiction exists.

Consistent with its duty to determine whether subject matter jurisdiction exists, the Court first examines the asserted basis for diversity jurisdiction.   ALI, the removing defendant, invoked the provision conferring original jurisdiction over matters exceeding $75,000 in controversy between "citizens of different States ... in which citizens or subjects of a foreign state are additional parties ...."   28 U.S.C. 1332(a)(3).   Dkt. 1 ¶ 11.   Under this provision, "federal courts do not have diversity jurisdiction over cases where there are foreign entities on both sides of the action, without the presence of citizens of a state on both sides." *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 860 (11th Cir. 2000) (emphasis added); *see also MCC-Marble Ceramic Ctr., Inc., v. Ceramica Nuova d'Agostino, S.p.A.*, 144 F.3d 1384, 1389 n.15 (11th Cir. 1998) (citing 15 James W. Moore, Moore's Federal Practice § 102.77 (3d ed. 1998) (noting that "diversity jurisdiction is not present in suits between two foreign citizens")).

In this case, some of defendants are citizens of a State and others are foreign citizens.   Three of the six defendants are domestic corporations: ALI, AL USA, and Seaboard.   Dkt. 1 ¶¶ 17-23; Dkts. 4, 5-1, 6, 7-1.   For diversity

purposes, their citizenships depend on their states of incorporation and principal places of business—*i.e.*, for ALI, New Jersey and Virginia; for AL USA, Delaware and Virginia; and for Seaboard, Kansas.   28 U.S.C. § 1332(c)(1).   The three other defendants—AL India, ALAB, and SMI—are foreign entities.   AL India is an Indian corporation, and ALAB is a Swedish corporation.   Their principal places of business, to the extent relevant, are India and Sweden, respectively.   SMI is a sole proprietorship formed in India whose proprietor resides in India.   Dkt. 75, Ex. D ¶¶ 3-5 (Declaration of Nishan Srivastava); Ex. D-2.   Thus, AL India, ALAB, and SMI qualify as "citizens or subjects of a foreign state" under § 1332(a)(3).

On the other side of the controversy, there is a single plaintiff: Hil-Tech, an LLC.   For diversity purposes, the citizenship of an LLC depends on the citizenship of its members.   *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).   Under that test, Hil-Tech is a citizen of both a State (Texas) and a foreign country (New Zealand).   *See* Dkt. 1-6 (Hil-Tech's disclosure statement in Oklahoma suit).

Focusing on Hil-Tech's member who resides in Texas, and the domestic defendants (ALI, AL USA, and Seaboard) who are citizens of Delaware, Virginia, and Kansas, this case involves "citizens of different States ...."  *See* 28 U.S.C. § 1332(a)(3).   And accounting for Hil-Tech's member who resides in New Zealand, as well as the foreign citizenship of the remaining defendants

(AL India, ALAB, and SMI), the case also involves "citizens or subjects of a foreign state [who] are additional parties ...." *See id.*

The question remains whether Hil-Tech's dual status as both a citizen of a State and of a foreign country affects the analysis. The only analogous appellate decision suggests the answer is no. *See Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 245-46 (7th Cir. 2003). There, the Seventh Circuit addressed a plaintiff LLC with members in a State (New Jersey) and in a foreign state (United Kingdom); a "principal defendant" who was a citizen of Delaware and New York; an individual defendant who was a citizen of the United Kingdom; and a third defendant who was "a citizen of either the United Kingdom or Virginia." *Id.* at 245. The court concluded the existence of citizens of the same foreign country on both sides of the controversy (i.e., the United Kingdom) did not defeat jurisdiction under § 1332(a)(3). *Id.* at 245-46.

Given this analysis, the *Tango Music* decision necessarily assumed that a plaintiff LLC with dual citizenship in both a State and a foreign country qualifies as a citizen of a State under § 1332(a)(3). This assumption gains support from authority treating LLCs as their constituent members for diversity purposes. That is, if "the citizenship of [an] LLC is determined by the citizenship of all of its members," *see Harvey*, 542 F.3d at 1080, then the existence of one plaintiff member who is a citizen of a State should satisfy

10

§ 1332(a)(3) even if another member is a citizen of a foreign country, when the LLC itself has sued both citizens of other States and citizens of foreign countries. The Court should therefore conclude that subject matter jurisdiction exists.

## II. **AL India's motion to dismiss for lack of personal jurisdiction.**

Although both AL India and ALAB moved to dismiss under Rule 12(b)(2), Hil-Tech voluntarily dismissed all its claims against ALAB, Dkt. 80. Because Hil-Tech's notice of dismissal under Rule 41(a)(1)(A)(i) was "immediately self-effectuating," it divested this Court of jurisdiction over Hil-Tech's claims against ALAB. *See Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010) (discussing *Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963)). ALAB's motion to dismiss, Dkt. 72, as well as Hil-Tech's related motions for extension and for jurisdictional discovery and an evidentiary hearing regarding ALAB's motion, Dkts. 77, 78, therefore should be denied as moot. AL India's parallel motion to dismiss is addressed below.

### A.     **Minimum contacts test.**

In a diversity suit, a federal court can exercise personal jurisdiction over a nonresident defendant only to the extent authorized by the forum state's laws and consistent with federal due process. *See Command-Aire Corp. v. Ont. Mech. Sales & Serv., Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step

inquiry collapses into one federal due process analysis." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citation omitted).  To satisfy due process, the defendant must have "minimum contacts with the forum state (*i.e.* that the defendant has purposely availed himself of the privilege of conducting activities within the forum state) and that exercising jurisdiction is consistent with traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted).

There are two types of personal jurisdiction: general and specific. General jurisdiction permits a federal court "to hear *any* claim against that defendant, even if all the incidents underlying the claim occurred" outside the forum state.  *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  "[O]nly a limited set of affiliations" will suffice to establish general jurisdiction.  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  In particular, a corporate defendant's "affiliations with the State" must be "so continuous and systematic as to render [it] essentially at home in the forum State."  *Id.* at 138-39 (internal quotation marks omitted).

In contrast, "[s]pecific jurisdiction applies when a non-resident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'"  *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,

921 F.3d 522, 539 (5th Cir. 2019) (quoting *Panda Brandywine Corp.*, 253 F.3d at 868).   "The non-resident's purposeful availment must be such that the defendant should reasonably anticipate being haled into court in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993) (internal quotation marks omitted).

## B.   The Court lacks personal jurisdiction over AL India.

Although AL India challenged both general and specific personal jurisdiction, Dkt. 50 at 4-9, Hil-Tech confined its response to specific personal jurisdiction.   *See* Dkt. 61 at 9-10.   Hil-Tech has thus abandoned reliance on general jurisdiction.   *Cf. Kuykendall v. Amazon Studios LLC*, 2022 WL 19337992, at *3 (S.D. Tex. Mar. 18, 2022) (plaintiff's failure to invoke general personal jurisdiction waived reliance on this theory).   Regardless, given AL India's status as an Indian corporation that manufactures products solely in India, it cannot be said to be "at home" in Texas.   *See Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919.   Accordingly, the Court lacks general personal jurisdiction over AL India.

Regarding specific jurisdiction, Hil-Tech alleges that AL India "intentionally placed its products in the stream of commerce and directed business activities toward Texas, including having [its] products sold in Texas." Dkt. 37 ¶ 2.3.   AL India responds that this allegation is conclusory and belied by record evidence.   Dkt. 50 at 5-7.   The Court agrees.

13

In the Fifth Circuit, "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) (quoting *Ruston Gas Turbines*, 9 F.3d at 419). This standard embodies the Fifth Circuit's interpretation of *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980), while "declin[ing] to follow the suggestion of the plurality in" *Asahi Metal Industry Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987), "that some additional action on the part of the defendant, beyond foreseeability, is necessary to 'convert the mere act of placing the product into the stream into an act purposefully directed toward the form State.'" *Luv N' Care, Ltd.*, 438 F.3d at 470 (quoting *Asahi*, 480 U.S. at 112 (O'Connor J., plurality op.)); *see also Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177-79 (5th Cir. 2013) (adhering to this standard as the narrowest grounds for decision in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 887-93 (2011) (Breyer, J., concurring)).

Nevertheless, "[t]he foreseeability required in the products liability context is 'not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipated being haled into court there.'" *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 273

14

(5th Cir. 2006) (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297).  To meet this standard, the defendant's contacts cannot be "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Ainsworth*, 716 F.3d at 177 (quoting *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012) (internal quotation marks omitted)).  "Once a product has reached the end of the stream and is purchased, a consumer's unilateral decision to take a product to a distant state, without more, is insufficient to confer personal jurisdiction over the manufacturer or distributor." *Seiferth*, 472 F.3d at 273 (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 298).

According to AL India, (1) it did not deliver the centrifuge into the stream of commerce with the foreseeable expectation that it would be purchased by Hil-Tech in Texas; and (2) AL India had no other contacts with Texas that could substantiate personal jurisdiction here.  Dkt. 50 at 5-8; *see also* Dkt. 63 at 2-5. As stated in the affidavit of its representative, AL India "does not sell or distribute any products directly to customers in the United States."  Dkt. 50-1 ¶ 9.  Rather, sales of "Alfa Laval" products are handled by "the separate Alfa Laval corporate entity" in a particular country or geographic region.  *Id.* Within the United States, that entity is ALI.  *Id.* ¶ 10.

AL India acknowledges that ALI occasionally has "purchased a product directly from [AL India] to sell to a customer in the United States ...."  *Id.* Uncontroverted evidence, however, shows that the centrifuge underlying this

suit was not among those products.  *See id.* ¶¶ 11-21.  Instead, the centrifuge was made and sold in India to Tetra Pak India Pvt Ltd., in 2014, for use in "the dairy market for dairy applications in India—specifically, milk separation and clarification."  *Id.* ¶¶ 12-15; *see also* Dkt. 50-1 at 8-9 (purchase order); *id.* at 11-12 (order confirmation).  A year later, Tetra Pak sold the centrifuge to another Indian company, likewise for use in the dairy industry.  *Id.* ¶ 16.

The acts of third parties, not AL India, resulted in the centrifuge's subsequent modification and installation at Seaboard's facility.    The Complaint acknowledges that *SMI*—not AL India—"modified the [centrifuge] and then made it available for sale in the United States."  Dkt. 37 ¶ 4.2; *see also* Dkt. 50-1 ¶ 19 (indicating that the centrifuge underwent "physical and technical modifications to function" as a blood plasma centrifuge after it was sold by AL India to Tetra Pak).  Yet SMI is not affiliated with and has no corporate relationship with AL India.  Dkt. 50-1 ¶ 20.  Nor is SMI an authorized dealer or distributor of Alfa Laval products.  *Id*.

These uncontroverted facts confirm that AL India had no reason to expect the centrifuge to end up in the United States.  The centrifuge was manufactured and sold by AL India for the discrete purpose of separating and clarifying milk—not blood products—and only for the market in India.  Even the purchaser, Tetra Pak, resold it for that limited purpose.  *Id.* ¶ 16.

Only later did SMI acquire the centrifuge, modify it to work as a blood separator, and sell the modified device to Hil-Tech, which then sold it to Seaboard for installation in Oklahoma. In this sense, SMI thus placed the centrifuge into a different stream of commerce than the one originally initiated by AL India.[2] Put another way, SMI—an entity outside of AL India's distribution chain—made the "unilateral decision" to ship the modified centrifuge to Oklahoma. *See Seiferth*, 472 F.3d at 273; *see also, e.g.*, *Eddy v. Printers House (P) Ltd.*, 627 F. App'x 323, 327 (5th Cir. 2015) ("The fact that the original buyer of the press sold it to another entity, which then sold it to another entity, clearly establishes that the press found its way into Texas not through any intentional act taken by TPH but through the unilateral activity of ... third [parties].") (internal quotation marks omitted); *Ethridge v. Samsung SDI Co.*, 617 F. Supp. 3d 638, 646-47 (S.D. Tex. 2022) (shipment of batteries to Texas "by unauthorized third parties" who were not affiliated with Samsung nor part of its distribution chain failed to satisfy stream-of-commerce test).

Hil-Tech's exhibits neither controvert the foregoing facts nor provide the necessary connection between AL India, this litigation, and the forum state.

---

[2] In its response brief, Hil-Tech asserts "upon reasonable belief and investigation"— but without supporting evidence—that the separator installed at Seaboard's facility was the Alfa Laval model BPM 209, which is a blood separator. Dkt. 61 ¶ 3.12 (citing PX8). This conclusory allegation cannot withstand a motion to dismiss for lack of personal jurisdiction. *See Panda Brandywine*, 253 F.3d at 868. To the contrary, other documents reflect that the model sold to Tetra Pak in 2014 was not the BPM 209, but rather, the S2181M. Dkt. 50-1 at 9-12 (purchase order and order confirmation).

Only one document addresses AL India in particular; it merely lists AL India's offices—all in India.  Dkt. 61-11 (PX10).  The remaining exhibits mention the "Alfa Laval" family of entities, generally, or entities *other than* AL India.  *See* Dkt. 61-5 (PX4, historical information regarding "Alfa Laval"); Dkt. 61-6 (PX5; stating the "Alfa Laval" organization "sells its products in approximately 100 countries and has its own sales organization sin over half these countries"); Dkt. 61-7 (PX6, website noting an "Alfa Laval Houston service center"); Dkt. 61-8 (PX7; listing ALI and other offices); Dkt. 61-10 (PX9, describing "Alfa Laval" as "a leading global provider of first-rate products in the areas of heat transfer; separation and fluid handling"); Dkt. 61-12 (PX11, listing ALI offices). Conspicuously lacking is any alleged or demonstrated basis for disregarding the separateness of these Alfa Laval entities.  *See, e.g.*, *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004) (requiring "clear evidence" of "something beyond" the entities' corporate relationship to rebut the presumption that related entities are independent for personal jurisdiction purposes).

Moreover, the Court already found that ALI, which has operations within the United States—including a service and sales center in Houston, *see* Dkt. 11 (Hil-Tech's reliance on same PX6 as Dkt. 61-7); Dkt. 17-1 ¶¶ 3-4 (ALI representative acknowledging that ALI has a Houston center)—has no connection with the centrifuge in this case and no contacts with Texas

18

regarding that centrifuge. *See* Dkt. 55 at 4-5 (finding "no evidence that ALI or AL USA handled the centrifuge through manufacturing, sale, marketing, or otherwise" and "no evidence ... that either ALI or AL USA ever had any contacts with the forum state with respect to the centrifuge"). The conclusion that ALI's Texas contacts are irrelevant forecloses Hil-Tech's reliance on those same contacts to justify personal jurisdiction over AL India, a separate entity.

The foregoing conclusion further confirms that this suit does not arise out of or relate to the Texas contacts of any Alfa Laval entity. "A defendant may have many meaningful ties to the forum, but if they do not connect to the plaintiff's claim, they cannot sustain our power to hear it." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317 (5th Cir. 2021); *see also, e.g.*, *Alexander v. Anheuser-Busch, L.L.C.*, 2021 WL 3439131, at *3 (5th Cir. Aug. 5, 2021) (per curiam) (although a plaintiff "need not show that these [forum] contacts caused his injury, he must at least show that they are related to it") (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021)). In this case, the centrifuge was sent by SMI to Hil-Tech in Texas, which then sold it to Seaboard in Oklahoma. Dkt. 37 ¶¶ 1.1, 4.5; Dkt. 50 at 3 (AL India's motion to dismiss); Dkt. 61 ¶¶ 3.4, 3.5 (Hil-Tech's response). As the Court found, the only Texas contacts—by ALI, not AL India—have no bearing on this centrifuge. *See* Dkt. 55 at 4-5. Given this conclusion, Hil-Tech

has not shown that this suit arises out of or relates to any Texas contacts by any "Alfa Laval" entity, let alone AL India in particular.

In short, Hil-Tech failed to make a *prima facie* showing that AL India "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities," whether based on a stream-of-commerce theory or otherwise. *See Panda Brandywine Corp.*, 253 F.3d at 868 (internal quotation marks omitted). AL India therefore is entitled to dismissal for lack of personal jurisdiction.

### C. Hil-Tech has not demonstrated that jurisdictional discovery or an evidentiary hearing is warranted.

In its response and other filings, Hil-Tech embeds requests to conduct jurisdictional discovery before the Court rules on AL India's motion to dismiss, and to set the issues for an evidentiary hearing. *See* Dkt. 59 (Hil-Tech's request for additional time to file a more-expansive response to the motion to dismiss, asserting need for jurisdictional discovery); Dkt. 60 (Hil-Tech's motion for jurisdictional discovery from AL India and for an evidentiary hearing); Dkt. 61 ¶¶ 1.7, 2.1 (Hil-Tech's response to AL India's motion to dismiss, incorporating Dkts. 59 and 60). According to Hil-Tech, this Court "must permit" discovery before resolving the jurisdictional issues. *See* Dkt. 60 ¶ 1.2; *see also id.* ¶ 4.4 (asserting that discovery is "*required* before this Court can consider any motions to dismiss"). That position does not comport with Fifth Circuit law.

First, Hil-Tech's lead argument presupposes that an evidentiary hearing is necessary to resolve disputed jurisdictional facts. *See* Dkt. 60 ¶¶ 4.1-4.2 (discussing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241-42 (5th Cir. 2008)). To the contrary, the *Walk Haydel* decision recognizes that a Rule 12(b)(2) motion may be determined *without* an evidentiary hearing, in which event "the plaintiff is required to present only a *prima facie* case for personal jurisdiction." 517 F.3d at 241. Contrast that with cases where conflicting facts could justify holding an evidentiary hearing. *See id.* at 242 (an evidentiary hearing "is intended to serve as a substitute for the resolution of factual and legal disputes relevant to jurisdiction at trial"). In those instances, the plaintiff would have the burden to establish personal jurisdiction by a preponderance of the evidence—thereby requiring an opportunity to conduct discovery. *Id.* at 241-42.

As explained above, the facts negating personal jurisdiction over AL India are uncontroverted. Hil-Tech did not make even a *prima facie* case for personal jurisdiction over AL India. Given the lack of conflicting jurisdictional facts, an evidentiary hearing would serve no purpose. Hil-Tech's request for a hearing should thus be denied, as should its request for discovery in connection with such a hearing.

Second, Al India correctly notes that to warrant jurisdictional discovery, a plaintiff must make a "preliminary showing of jurisdiction." *See Fielding v.*

*Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005); Dkt. 69 at 2-3. This requires "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts ...." *Id.* (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).   Yet Hil-Tech's allegations do not suggest with reasonable particularity that AL India has minimum contacts with Texas.   The Complaint is vague and conclusory, asserting that "Alfa Laval" manufactured the centrifuge at issue, even though there are multiple "Alfa Laval" entities.   Dkt. 37 ¶¶ 1.1, 4.1, 5.6.   The only allegations specific to AL India claim that it manufactures, designs, or distributes products "for sale in Texas"—without indicating that *this centrifuge* was among those products.   *Id.* ¶ 2.3.

Third, Hil-Tech failed to substantiate the need for discovery, as AL India correctly notes.   *See* Dkt. 69 at 3.   To do so, Hil-Tech had to identify what specific information it expects to obtain and how that information would support personal jurisdiction.   *See Embry v. Hibbard Inshore, L.L.C.*, 803 F. App'x 746, 749 (5th Cir. 2020) (per curiam) (citing *Freeman v. United States*, 556 F.3d 326, 342-43 (5th Cir. 2009)); *see also, e.g., Mercer v. McKenzie Tank Lines, Inc.*, 2018 WL 3218047, at *5 (S.D. Tex. July 2, 2018) (party seeking jurisdictional discovery "must [1] identify the discovery needed, [2] the facts expected to be obtained thereby, and [3] how such information would support personal jurisdiction") (internal quotation marks omitted).   Hil-Tech, however,

22

has not stated what facts discovery would reveal and how those facts could substantiate that AL India possessed the requisite contacts with Texas to support personal jurisdiction.  *See, e.g.*, *Mercer*, 2018 WL 3218047, at *5 (denying discovery for lack of similar showing); *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 685 (S.D. Tex. 2014) (denying discovery where plaintiffs "have not described what facts they expect to discover and how that information would support jurisdiction").

To the contrary, the record makes clear that discovery would not be fruitful.  "A plaintiff is not entitled to jurisdictional discovery when 'the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion.'"  *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429 (5th Cir. 2014) (quoting *Freeman*, 556 F.3d at 342).  "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted."  *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1981).

That is the case here.  Hil-Tech has not articulated any reason to question the sworn statements submitted by AL India's representative or the additional documents submitted by AL India—all of which negate the existence of minimum contacts with Texas.  *See supra* Part II.B.  Jurisdictional discovery is unwarranted.  *See, e.g.*, *Coulter v. Deere & Co.*, 2022 WL 3212999, at *5 (S.D. Tex. Aug. 9, 2022) (same conclusion where plaintiff "has not provided a basis to dispute the evidence showing that [defendant] does not

have minimum contacts in Texas and he has not alleged facts supporting that discovery would change this jurisdictional analysis"); *Bar Grp., LLC v. Bus. Intel. Advisors, Inc.*, 215 F. Supp. 3d 524, 562 (S.D. Tex. 2017) (denying jurisdictional discovery where movant "has only offered speculation as to jurisdiction and is waging a fishing expedition into jurisdictional facts") (internal quotation marks omitted).

## III.   Seaboard's Rule 12(b)(6) motion to dismiss.

The remaining motions target Hil-Tech's allegations against Seaboard, the entity that installed and operated the centrifuge in Oklahoma after purchasing it from Hil-Tech.  Invoking Rule 12(b)(6) and Texas law, Seaboard argues that: (a) Hil-Tech's breach of contract claim lacks sufficient factual detail to state a plausible basis for recovery; (b) Hil-Tech's negligence claim fails as a matter of law because Seaboard owes no duty of care to Hil-Tech, the economic loss rule precludes recovery, and the claim is barred by limitations; and (c) Texas law forecloses Hil-Tech's claims for contribution and indemnity. Dkt. 49 at 5-15.  Similarly relying on Texas law, Hil-Tech argues that it has a cognizable claim for "indemnity and/or contribution" based on a provision in its standard terms of conditions of sale.[3]  Dkt. 54 at 4-8.  But Hil-Tech does not

---

[3] The parties assume, without explanation, that Texas law governs Hil-Tech's claims against Seaboard.  Because both parties acquiesced to Texas law, the Court declines to examine the choice-of-law issue *sua sponte*.  *See Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987) (noting that parties are "obligat[ed] to call the

dispute the inadequacy of its standalone breach of contract and negligence claims, claiming instead that these claims were pleaded only to the extent necessary to meet a condition precedent to indemnification.[4]  *Id.* at 9.

### A.    Hil-Tech's negligence claim is barred.

Regarding the negligence claim, Seaboard invokes several legal impediments to recovery.  Dkt. 49 at 7-12.  Notably, Hil-Tech does not dispute Seaboard's contentions, asserting instead that its negligence allegations served the limited purpose of articulating a potential condition precedent to Hil-Tech's indemnity claim.  *See* Dkt. 54 ¶ 4.9.  Hil-Tech therefore appears to waive reliance on negligence as a standalone basis for recovery.

In any event, the Court need only address Seaboard's last contention: that any negligence claim is barred by limitations.  "'[D]ismissal under Rule 12(b)(6) may be appropriate based on a successful affirmative defense,' provided that the affirmative defense 'appear[s] on the face of the complaint.'"

---

applicability of another state's law to the court's attention in time to be properly considered"); *Hilgers v. VIP Moving & Storage Inc.*, 2020 WL 7059589, at *2 (N.D. Tex. Dec. 2, 2020) (declining to analyze choice-of-law *sua sponte*, collecting authorities).  There is no indication that applying Texas law would result in manifest injustice.  *See Am. Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 540 (5th Cir. 1987) (noting that "parties generally are bound by the theory of law they argue in the district court, absent some 'manifest injustice'"; mere fact that applying another state's law could lead to different result does not suffice).

[4] To the extent that Hil-Tech also asks the Court to defer ruling on Seaboard's Rule 12(b)(6) motion, *see* Dkt. 52 ¶ 4.5, its request is denied.  There is no justification for delay when the only question is whether the Complaint states plausible claims.

*Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020) (quoting *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006)).   As Seaboard notes, Dkt. 49 at 11, Texas law imposes a two-year limitations period for negligence claims, *see Tex. Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 649 & n.7 (5th Cir. 2001) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a), which states that "a person must bring suit for ... personal injury ... not later than two years after the day the cause of action accrues").   In general, a cause of action accrues "and the limitations period begins when a wrongful act causes a legal injury." *Id.* & n.8 (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996)).

Hil-Tech's negligence claim asserts that Seaboard breached a duty of care by "fail[ing] to properly install or maintain" the centrifuge, thereby "causing the injuries allegedly sustained by Mr. Ortiz." Dkt. 37 ¶ 5.9. The Complaint acknowledges, however, that the accident happened on April 5, 2019. *Id.* ¶ 4.7. Hil-Tech did not file this suit until July 8, 2022, more than two years after Mr. Ortiz's injury occurred. *See* Dkt. 1-3. Its negligence claim therefore should be dismissed as untimely.

### B.   Hil-Tech has not adequately pleaded a breach of contract claim.

Hil-Tech does not meaningfully dispute Seaboard's contention that the breach-of-contract claim is inadequately pleaded. *Compare* Dkt. 49 at 5-6 (Seaboard's contentions that the Complaint lacks necessary factual allegations), *with* Dkt. 54 ¶ 4.9 (Hil-Tech's response that this claim likely is "unnecessary" to support its claim for indemnification). To recover for breach of contract, a plaintiff must prove "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.–Houston [1st Dist.] 2001, no pet.)).

According to the Complaint, Seaboard failed to perform "contractual obligations" by "failing to properly install, service, or otherwise maintain" the centrifuge. Dkt. 37 ¶ 5.4. But the Complaint does not specify what contractual provision Seaboard purportedly breached. This deficiency is fatal to Hil-Tech's breach-of-contract claim. *See Advon Corp. v. Coopwood's Air Conditioning Inc.*, 517 F. Supp. 3d 656, 663 (S.D. Tex. 2021) (dismissing breach-of-contract claim that did not "specif[y] the key terms of the contract nor state[d] what and how they were breached") (internal quotation marks omitted); *see also Williams v.*

27

*Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014) (affirming dismissal of similarly deficient claim).

### C. Hil-Tech has not stated a plausible claim for contribution or indemnification.

Seaboard contends, and the Court agrees, that Hil-Tech's claims for indemnity and contribution are deficient. The Complaint recites, in formulaic fashion, that Hil-Tech is "entitled to defense costs, contribution, and indemnity from Defendants" for sums incurred in Mr. Ortiz's Oklahoma suit "pursuant to, among other things Chapter 33 and 82 of the Texas Civil Practices and Remedies and Texas common law." Dkt. 37 ¶ 5.12. This conclusory allegation, asserted against "Defendants" collectively, fails to state a plausible basis for relief. *See, e.g.*, *Iqbal*, 556 U.S. at 678 (conclusory allegations are insufficient); *SCHST, Inc. v. Arthur J. Gallagher & Co.*, 2022 WL 4022054, at *9 (S.D. Tex. Aug. 23, 2022) ("[G]lobal allegations of wrongdoing by Defendants, collectively, are insufficient to state a claim for relief.") (internal quotation marks omitted), *adopted by* 2022 WL 4588589 (S.D. Tex. Sept. 28, 2022).

Regardless, Seaboard also correctly asserts that Hil-Tech's claim for contribution is barred as a matter of law. *See* Dkt. 49 at 12-13. In Texas, a defendant who pays more than its proportionate share of responsibility when settling a plaintiff's entire claim has no right to contribution from other non-settling joint tortfeasors, whether under Texas's comparative negligence

regime, Tex. Civ. Prac. & Rem. Code § 33.001, *et seq.*, or Texas common law.[5]
*See Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 22 (Tex. 1987) ("We hold
that a defendant can settle only his proportionate share of a common liability
and cannot preserve contribution rights under either the common law or the
comparative negligence statute by attempting to settle the plaintiff's entire
claim."); *Sunbelt Rentals, Inc. v. Rogers*, 2017 WL 2545094, at *4 (Tex. App.—
Houston [1st Dist.] June 13, 2017, pet. denied) (collecting post-*Jinkins*
authorities recognizing that a co-defendant's settlement with a plaintiff
"extinguishes the settling defendant's right of contribution from a non-settling
joint tortfeasor") (internal quotation marks and alteration omitted).

Hil-Tech's indemnity claim is equally flawed. "Texas law generally
recognizes three categories of indemnity: (1) contractual; (2) statutory; and
(3) in rare circumstances, common law." *Joe Hand Promotions, Inc. v. AIH
Alamo Ice House, LLC*, 2017 WL 8895450, at *2 (W.D. Tex. Sept. 18, 2017)
(citing *B&B Auto Supply, Sand Pit & Trucking Co. v. Cent. Freight Lines, Inc.*,
603 S.W.2d 814, 817 (Tex. 1980)). The Complaint does not identify any

---

[5] Although not implicated by the current Complaint, Texas law also would preclude
Hil-Tech from obtaining contribution if Seaboard had settled Mr. Ortiz's claims
against it. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.015(d) ("No defendant has a
right of contribution against any settling person.").

contractual basis for indemnification.[6]   *See* Dkt. 37 ¶ 5.12.   Although the Complaint invokes Chapter 82 of the Texas Civil Practice and Remedies Code, the relevant statute only grants a "seller" a limited right to indemnification from a product "manufacturer." Tex. Civ. Prac. & Rem. Code Ann. § 82.002(a). There is no indication that Seaboard qualifies as a "manufacturer" that designed, constructed, built, fabricated, or assembled the centrifuge and placed it in the stream of commerce. *See id.* § 82.001(4).   Rather, the Complaint states that Seaboard "installed and placed" the centrifuge "into operation at the Seaboard plant." Dkt. 37 ¶ 4.5.

Finally, "[c]ommon-law indemnity is extremely rare." *Joe Hand Promotions, Inc.*, 2017 WL 8895450, at *2.   It applies in product-liability suits involving innocent retailors whose liability is "purely vicarious," but only if "[t]he indemnitor ... [is] liable or potentially liable for the product defect, and *his liability [is] adjudicated or admitted.*" *See Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 255 (Tex. 2006) (emphasis added).   For example, a retailer that settles a suit without a judicial determination resolving the parties' liability cannot obtain common-law indemnification from a co-defendant. *See Humana Hosp. Corp. v. Am. Med. Sys., Inc.*, 785 S.W.2d

---

[6] Hil-Tech's invocation of an express indemnity provision, Dkt. 54 ¶¶ 4.7, 4.8, found nowhere in the Complaint, *see* Dkt. 37 ¶ 5.12, is more appropriately characterized as a basis for seeking leave to amend the Complaint. *See infra* Part III.D.

144, 145 (Tex. 1990).  Hil-Tech's allegations indicate that it settled the Ortiz suit without obtaining a judicial determination resolving Seaboard's liability.  *See* Dkt. 37 ¶¶ 1.2, 4.7, 4.8 n.1.  As a result, Hil-Tech cannot obtain common-law indemnity from Seaboard, even assuming other requirements were met.

In sum, Hil-Tech has not pleaded a plausible basis for contribution or indemnification.  This Court should grant Seaboard's motion to dismiss.

### D. Hil-Tech is entitled to amend its Complaint only with respect to its claim for breach of an indemnity agreement.

As an alternative position, Hil-Tech requests leave to amend its Complaint and asks for an extension to do so until the remaining defendant (SMI) is served with process.[7]  Dkts. 52, 53.  Seaboard responds that amendment should be denied as futile, and that Hil-Tech cannot justify an indefinite extension to rectify its pleading deficiencies.  Dkt. 64 at 3-5.

Courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This rule "evinces a bias in favor of granting leave to amend."  *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotation marks omitted).  Although leave to amend is not automatic, "[a] district court must possess a substantial reason to deny a request for leave to amend ...."  *Id.* (internal quotation marks omitted).  In particular, the Court

---

[7] Hil-Tech does not seek leave to amend its deficient allegations of personal jurisdiction against AL India.  Accordingly, the Court confines its analysis to Hil-Tech's allegations against Seaboard.

can deny leave to amend if "the complaint as amended would be subject to dismissal." *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009)); *see also Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are ... unable to amend in a manner that will avoid dismissal.").

Amendment would be futile for most of Hil-Tech's claims. Hil-Tech does not argue otherwise. It does not identify any factual allegations that could overcome the limitations barrier to Hil-Tech's negligence claim. *See supra* Part III.A. Nor has Hil-Tech articulated any basis for concluding that Seaboard owed Hil-Tech a contractual obligation to maintain or operate the centrifuge. *See supra* Part III.B. In addition, Texas law bars Hil-Tech's claims for contribution and for common-law and statutory indemnification. *See supra* Part III.C. The Court denies leave to amend those claims.[8]

Based on Hil-Tech's briefing and attachments, however, Hil-Tech may have a viable claim for breach of an indemnity agreement. "Under Texas law, a breach of indemnity agreement claim has five elements: (1) a contractual

---

[8] A request for leave to amend is a non-dispositive matter that a magistrate judge can resolve. *See Talbert v. Am. Risk Ins. Co.*, 405 F. App'x 848, 851 (5th Cir. 2010).

indemnity agreement exists; (2) the agreement obligates defendants to indemnify the surety if claims are made on the bonds issued; (3) claims were made on the bonds issued; (4) all conditions precedent for recovery have occurred, been performed, waived or excused; and (5) the surety has been damaged." *Travelers Cas. & Sur. Co. of Am. v. James*, 2016 WL 9306254, at *5 (N.D. Tex. Oct. 5, 2016) (citing *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995)).

Although not mentioned in the Complaint, Hil-Tech's response to Seaboard's motion to dismiss attaches a set of terms and conditions that contain the following indemnity provision:

> The Customer Indemnifies [Hil-Tech] against all costs, claims, demands, expenses and liabilities of whatsoever nature, including without prejudice to the generality of the foregoing, claims for death, [and] personal injury ... which may be made against [Hil-Tech] or which [Hil-Tech] may sustain, pay or incur as a result of or in connection with the supply of Products, unless such cost, claim, demand, expense or liability shall be directly and solely attributable to the negligence of [Hil-Tech] or the negligence of a duly authorized employee or agent of [Hil-Tech].

Dkt. 54 ¶ 4.7 (quoting Dkt. 54-1, PX1 ¶ 9.1.)  According to Hil-Tech, this provision requires Seaboard to indemnify it for "expenses and liabilities" that Hil-Tech incurred while litigating and resolving Mr. Ortiz's suit because his injuries were not "solely attributable" to Hil-Tech's negligence. *See id.* ¶ 4.8.

Seaboard argues that Hil-Tech cannot rely on these terms and conditions, citing Hil-Tech's discovery responses in the Oklahoma suit.  Dkt.

49 at 16. When responding to prior discovery, Hil-Tech admitted that it was "unable to confirm that a copy of [the terms and conditions] was sent to Seaboard" during the relevant timeframe. Dkt. 49-1 at 5-6 (Response to Request for Admission No. 12). This prior admission, however, "is not an admission for any other purpose and cannot be used against [Hil-Tech] in any other proceeding"—like this suit. *See* Fed. R. Civ. P. 36(b) (addressing effect of admissions); *see also, e.g.*, Fed. R. Civ. P. 36(a)(1) (explaining that request for admission applies "for purposes of the pending action only"); *Estate of Sturdivant v. Smith*, 2019 WL 3225714, at *3 (S.D. Miss. July 17, 2019) (deemed admissions under Rule 36 do not support issue preclusion).

Moreover, Hil-Tech's inability to locate a written record of sending the terms and conditions—within its *own* files—does not render it unreasonable to believe that *Seaboard*'s files may include a copy of those terms and conditions. That would comport with Hil-Tech's stated custom of sending the terms and conditions to its customers. *See* Dkt. 49-1 at 5-6. At this time, the Court cannot conclude that Hil-Tech's claim for breach of an indemnity agreement would be futile. Accordingly, the Court grants Hil-Tech's request for leave to amend only with respect to this claim.

Hil-Tech's remaining request to defer the deadline for amending its Complaint is denied. Hil-Tech bemoans that requiring it to file a new amended pleading now would necessitate renewed service of process on SMI. *See* Dkt.

34

52 ¶ 4.4.  This is a problem of Hil-Tech's own making.  Hil-Tech knew about the alleged indemnification agreement before filing this suit.  Yet it failed to articulate this claim even when amending its pleading post-removal.  Hil-Tech cannot justify allowing the case to linger indefinitely without adequately pleading its claims.  It is therefore ordered that Hil-Tech file its amended complaint within 30 days of this Memorandum and Recommendation.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that, pursuant to Plaintiff Hil-Tech LLC's self-executing notice of voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i), Dkt. 80, the Court should **DENY AS MOOT** Alfa Laval AB's motion to dismiss for lack of personal jurisdiction (Dkt. 72), Plaintiff Hil-Tech's related motion for extension of time respond (Dkt. 77), and Hil-Tech's motion for discovery and an evidentiary hearing (Dkt. 78).

It is further **RECOMMENDED** that Defendant Alfa Laval India Pvt. Ltd.'s motion to dismiss for lack of personal jurisdiction (Dkt. 50) be **GRANTED**, that Hil-Tech's motion for extension of time to file a more fulsome response to AL India's motion (Dkt. 59) be **DENIED**, that Hil-Tech's related motion for jurisdictional discovery and an evidentiary hearing as to AL India (Dkt. 60) be **DENIED**, and that Hil-Tech's claims against AL India be **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

It is further **RECOMMENDED** that Defendant Seaboard Foods Service Inc.'s motion to dismiss (Dkt. 49) be **GRANTED**.  But it is **ORDERED** that Hil-Tech's motion for leave to amend its Complaint (Dkt. 53) be **GRANTED IN PART**, with respect to its claim against Seaboard for breach of an express indemnity agreement, and **DENIED IN PART** with respect to Hil-Tech's other claims.

It is **ORDERED** that Hil-Tech's further request for an indefinite extension of time to amend its Complaint (Dkt. 52) be **DENIED**.  Hil-Tech must file its amended pleading **by July 30, 2023**.

It is further **ORDERED** that Defendants Alfa Laval Inc., Alfa Laval Separation Inc., and Alfa Laval USA Inc.'s motion for leave to file a motion to strike (Dkt. 47) Hil-Tech's omnibus response to prior motions to dismiss that the Court has already granted, Dkt. 55, is **DENIED AS MOOT**.

For clarity, Hil-Tech's claims against Defendant Shree Mahalaxmi Industries, and its soon-to-be-amended claim against Seaboard for breach of an indemnity agreement remain pending.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for**

plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on July 3, 2023, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge