United States District Court
Southern District of Texas
**ENTERED**
October 27, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Hil-Tech, LLC d/b/a GTech USA, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 4:22-cv-02310 |
| Shree Mahalaxmi Industries; Alfa Laval India Pvt. Ltd.; Alfa Laval AB; Alfa Laval, Inc.; Alfa Laval USA, Inc.; Alfa Laval Separation, Inc.; and Seaboard Foods Service, Inc., | § § § § § § § | |
| *Defendants.* | § § | |

## MEMORANDUM AND RECOMMENDATION

This case, which was referred to the undersigned judge, Dkt. 17, concerns indemnification for the costs of litigating and settling a previous personal injury suit. After dismissing the claims against nearly all defendants, *see* Dkt. 55, 82 (adopting Dkt. 81), the Court granted Plaintiff Hil-Tech, LLC d/b/a GTech USA ("Hil-Tech") leave to amend its claim against Defendant Seaboard Foods Service, Inc. ("Seaboard") for breach of an indemnity agreement, *see* Dkt. 82 at 2. Three motions are now pending.

First, Seaboard filed a motion to dismiss Hil-Tech's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. 85. The motion

asserts that Hil-Tech inadequately pleaded its sole remaining claim against Seaboard for contractual indemnity.  Dkt. 85 at 1.

In turn, Hil-Tech filed an opposed motion for extension of time to respond pending further discovery.  Dkt. 89; *see also* Dkt. 93 (Seaboard's response).  But Hil-Tech filed a response anyway, Dkt. 91, to which Seaboard replied, Dkt. 92.

Contemporaneously with its response, Hil-Tech filed a motion for leave to amend its complaint.  Dkt. 90.  Seaboard responded to that motion, Dkt. 93, and Hil-Tech filed a reply, Dkt. 94.

After carefully considering the parties' briefs, the record, and the applicable law, it is recommended that Seaboard's Rule 12(b)(6) motion to dismiss (Dkt. 85) be granted.  The Court further denies Hil-Tech's motions for extension of time to respond (Dkt. 89) and for leave to amend (Dkt. 90).

## Background

The background to this case is detailed in prior decisions resolving Hil-Tech's claims against all defendants except Seaboard and Shree Mahalaxmi Industries.[1]  *See Hil-Tech, LLC v. Shree Mahalaxmi Indus.*, 2023 WL 4602738, at *2 (S.D. Tex. July 3, 2023), *adopted by* 2023 WL 4602691 (S.D. Tex. July 18,

---

[1] Shree Mahalaxmi Industries, a company in India, has yet to make an appearance in this case.  At a recent conference, Hil-Tech stated that it is still awaiting service of process through the Hague Convention.

2023).   The following summary focuses on Hil-Tech's allegations against Seaboard, which are taken as true at this stage.[2]

This case arises out of a personal injury action that was filed and resolved in an Oklahoma federal court.  In that prior action, Luis Ortiz claimed he was injured by a defective centrifuge while working at Seaboard's processing plant in Oklahoma.  Dkt. 84 ¶ 4.10.  He filed suit in the Western District of Oklahoma (the "Oklahoma Suit") against Hil-Tech, asserting strict liability and negligence claims based on the installation, assembly, operation, maintenance, and repairs of the centrifuge.  *See Ortiz v. Alfa Laval India Pvt. Ltd.*, 5:19-cv-00869-HE, Dkt. 1 (W.D. Okla. Sept. 18, 2019).  Ortiz later added Seaboard as a defendant, alleging that Seaboard did not safely and correctly assemble, install, maintain, and operate the centrifuge.  *Id.*  Ortiz settled the lawsuit and received payments for its claims against Hil-Tech.  Dkt. 84 ¶ 1.3.

Hil-Tech then filed this suit in state court, asserting several claims against Seaboard: (1) breach of contract; (2) negligence claim; and (3) indemnification and contribution for costs of defending and settling the Ortiz suit.  Dkt. 1-3 at 10-12.  Hil-Tech also sued several related "Alfa Laval"

---

[2] Hil-Tech's live pleading is docketed twice, *see* Dkt. 83, 84, but the first filing is mislabeled on the docket sheet.  The Court therefore references the second docket entry, Dkt. 84.

entities and Shree Mahalaxmi Industries, a company in India. *See id.* One of the defendants removed the case to this Court. Dkt. 1.

The Court resolved multiple motions filed by Hil-Tech, the Alfa Laval entities, and Seaboard, dismissing all claims against those defendants but allowing Hil-Tech to amend its pleading only with respect to its claim that Seaboard breached an express indemnity agreement. *See Hil-Tech, LLC*, 2023 WL 4602738, at *13-14.

Hil-Tech then filed its First Amended Complaint (the "Complaint"), seeking indemnity from Seaboard for the strict liability and negligence claims that Hil-Tech settled in the Oklahoma Suit. Dkt. 84 ¶ 5.9. Hil-Tech bases this claim on a provision in its standard form, entitled "GTech USA Sales Terms, Conditions and Warranty" (the "Terms and Conditions"). *See id.*; *see also* Dkt. 84-3 (PX-3). The Terms and Conditions consist of a three-page, single-spaced document that Hil-Tech allegedly sent to Seaboard when offering to sell it the centrifuge. Dkt. 84 ¶ 4.6; Dkt. 84-3 at 2-4 (PX3).

Section 9.1 of the Terms and Conditions, entitled "Indemnity," states:

> The Customer Indemnifies [Hil-Tech] against all costs, claims, demands, expenses and liabilities of whatsoever nature, including without prejudice to the generality of the foregoing, claims for death, personal injury, damage to property and consequential loss (including loss of profits), which may be made against [Hil-Tech] or which [Hil-Tech] may sustain, pay or incur as a result of or in connection with the supply of Products, unless such cost, claim, demand, expense or liability shall be directly and solely

4

attributable to the negligence of [Hil-Tech] or the negligence of a duly authorized employee or agent of [Hil-Tech].

Dkt. 84-3 at 3. Elsewhere, the Terms and Conditions specify that the agreement "will be governed by and construed in accordance with" Texas law. *Id.* at 4 ¶ 11.6.

Without conceding that it received the Terms and Conditions, Seaboard moved to dismiss Hil-Tech's claims for indemnity, asserting that Section 9.1 does not comport with Texas's fair notice doctrine and is therefore unenforceable. Dkt. 85 at 1. Hil-Tech filed a motion asking the Court to defer resolving Seaboard's motion until Hil-Tech obtains discovery to determine if Seaboard received the Terms and Conditions such that it had "actual notice and/or knowledge" of the indemnity provision. Dkt. 89 ¶ 1.2. Hil-Tech also moved to amend its pleading to assert actual notice or knowledge as a counter-defense to the fair notice doctrine. *See* Dkt. 90.

## Legal standard

Dismissal under Rule 12(b)(6) is warranted if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556

5

U.S. 662, 678 (2009).  Rather, "the complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."  *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56).  When conducting this inquiry, the Court can consider all documents referenced and incorporated in the complaint and central to the plaintiff's claim.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (considering terms of contracts that were not attached to, but were referenced in, the complaints).

## Analysis

Invoking Rule 12(b)(6) and Texas law, Seaboard argues that Hil-Tech's claim for indemnification is barred.  According to Seaboard, Section 9.1 does not satisfy the two requirements of Texas's fair notice doctrine because (1) it does not explicitly state that Seaboard would be liable for Hil-Tech's negligence or strict liability (the express negligence rule); and (2) the provision is not sufficiently conspicuous.  Dkt. 85 at 5-13.

Apart from disputing Seaboard's contentions, Hil-Tech requests leave to amend its Complaint to assert that Seaboard had actual notice or knowledge of the Terms and Conditions upon receiving the document from Hil-Tech.  According to Hil-Tech, such notice or knowledge would override both prongs of the fair notice doctrine.  *See* Dkt. 90-1 at ¶ 5.12.  In addition, Hil-Tech seeks

an extension of time to conduct discovery, which Hil-Tech maintains may reveal that Seaboard received the Terms and Conditions and, thus, was aware of Section 9.1.  Dkt. 89 at ¶ 1.2.

Seaboard is correct in material part.  As a matter of law, Section 9.1 does not satisfy the express negligence rule, which is one component of Texas's fair notice doctrine.  Seaboard therefore has no contractual obligation to indemnify Hil-Tech, regardless of whether Section 9.1 is sufficiently conspicuous.  And even if Seaboard received or agreed to the Terms and Conditions, as Hil-Tech proposes to investigate or allege, that would not be enough to supplant the express negligence rule.  As a result, the Court should grant Seaboard's motion to dismiss and deny Hil-Tech's requests for discovery and leave to amend.

## I. Section 9.1 does not satisfy the express negligence rule of Texas's fair notice doctrine.

In its response to Seaboard's motion to dismiss, Hil-Tech argues that the indemnity provision, Section 9.1, satisfies both components of the fair notice doctrine: the express negligence rule and the conspicuousness requirement. The Court declines to resolve whether Section 9.1 is conspicuous because it does not explicitly require Seaboard to indemnify Hil-Tech for its own negligence and strict liability, as the express negligence rule requires.

**A.**     **The fair notice doctrine applies to indemnity provisions.**

Texas's fair notice doctrine limits the enforceability of exculpatory clauses that seek to release a party from liability for its own negligence and strict liability. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1987); *Hous. Lighting & Power Co. v. Atchison, Topeka & Santa Fe Ry.*, 890 S.W.2d 455, 459 (Tex. 1994). The same doctrine applies to contractual provisions requiring indemnity for a party's own negligence because such provisions involve "extraordinary shifting of risk …." *Dresser*, 853 S.W.2d at 508. The doctrine also extends to "parties seeking to indemnify an indemnitee against strict liability." *Hous. Lighting*, 890 S.W.2d at 456.

The fair notice doctrine has two requirements: the express negligence rule and conspicuousness. *Dresser*, 853 S.W.2d at 508. "Compliance with both of the fair notice requirements is a question of law for the court." *Id.* at 509. "A contract which fails to satisfy either of the fair notice requirements when they are imposed is unenforceable as a matter of law." *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004).

**B.**     **Section 9.1 does not satisfy the express negligence rule.**

Contrary to Hil-Tech's contention, Section 9.1's language requiring indemnity for "all claims and liabilities, including personal injury" is insufficient to hold Seaboard liable for Hil-Tech's negligence and strict liability in the Oklahoma Suit. *See* Dkt. 91 ¶¶ 3.7, 4.10. Such "broad statements of

indemnity are insufficient to satisfy the express negligence rule." *See Safeway, Inc. v. PDX, Inc.*, 676 F. App'x 229, 233 (5th Cir. 2017) (per curiam) (internal quotation marks omitted).

"[P]arties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms … within the four corners of the contract." *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987). "[I]ndemnification for [strict liability] must also be expressly stated in the parties' agreement." *Hous. Lighting*, 890 S.W.2d at 458. This requirement prevents parties from drafting ambiguous provisions that conceal their intent to shift the costs of their own wrongdoing to a contracting counterparty. *See id.* at 458; *Ethyl*, 725 S.W.2d at 707-08. Language globally requiring indemnity for all losses, claims, or liabilities is not sufficient to trigger an obligation to indemnify for another's own negligence or strict liability. *See, e.g.*, *Safeway*, 676 F. App'x at 234 (provision stating the licensee would indemnify the licensor "from any and all loss, damage, or expense (or claims of damage or liability)" did not "express, in specific terms, an intent to indemnify [licensor] for its own negligence"); *Fisk Elec. Co. v. Constructors & Associates, Inc.*, 888 S.W.2d 813, 814, 815-16 (Tex. 1994) (similarly broad language was insufficient "[w]ithout an express reference in the indemnification provision to claims based upon negligence").

Section 9.1 does not comply with the express negligence rule.  Section 9.1 requires a customer to indemnify Hil-Tech for "all costs, claims, demands, expenses and liabilities of whatsoever nature …." Dkt. 84-3 ¶ 9.1.  There is no reference to strict liability.  Nor does Section 9.1 explicitly state that a customer must indemnify Hil-Tech for its own negligence.  *See id.*  Its language is materially indistinguishable from the provisions rejected above.  *See Safeway*, 676 F. App'x at 234; *Fisk Elec. Co.*, 888 S.W.2d at 814.

Rather than affirmatively requiring indemnity for Hil-Tech's own negligence, Section 9.1 suggests this obligation by negative implication.  The operative phrase excludes the obligation to indemnify any "claim, demand, expense or liability" that is "directly and solely attributable to the negligence of" Hil-Tech.  Dkt. 84-3 ¶ 9.1.

But "a contract subject to the express negligence rule cannot define what is included in an indemnity provision by stating what obligations are outside that indemnity agreement." *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 462 (5th Cir. 2002) (addressing Texas law).  Indeed, the Texas Supreme Court found that a similar clause requiring indemnity for "all claims" but excluding those "resulting from the sole negligence of the owner" failed to "specifically state that [Contractor] was obligated to indemnify [Owner] for [Owner's] own negligence." *See Atl. Richfield Co. v. Petroleum*

*Personnel, Inc.*, 768 S.W.2d 724, 725 (Tex. 1989) (quoting and addressing *Singleton v. Crown Cent. Petroleum Corp.*, 729 S.W.2d 690 (Tex. 1987)).

Despite these settled principles, Hil-Tech insists that an indemnity provision need not use the term "negligence" so long as the intent to require indemnification is clear.  Dkt. 91 ¶ 4.8.  But Hil-Tech misreads the cases on which it relies.  Unlike Section 9.1, the provisions deemed enforceable in those cases explicitly state that the indemnitor must indemnify for the indemnitee's own negligence.  *See Enserch Corp. v. Parker*, 794 S.W.2d 2, 8 (Tex. 1990) (requiring indemnification of "any claim regardless of whether such claims are founded in whole or in part upon alleged *negligence* of [the indemnitee]") (emphasis added) (internal quotation marks omitted); *Banzhaf v. ADT Sec. Sys. Sw., Inc.*, 28 S.W.3d 180, 189 ("The agreement expressly makes the indemnity provisions applicable to loss, damage, or injury from '*negligence*, active or otherwise, of [the indemnitee].'") (emphasis added).  The same is true of Hil-Tech's remaining cases, *see* Dkt. 91 ¶ 4.9; all of them affirmatively and expressly require indemnity for the indemnitee's own negligence.[3]

---

[3] *See, e.g.*, *Dupont v. TXO Prod. Corp.*, 663 F. Supp 56, 57 (E.D. Tex. 1987) (provision addressed "all claims, demands, and causes of action of every kind and character without limit and without regard to the cause or causes thereof or the negligence of any party or parties") (emphasis omitted); *B-F-W Constr. Co. v. Garza*, 748 S.W.2d 611, 612-13 (Tex. App.—Fort Worth 1988, no writ) (indemnity for "all claims, demands, liens, damages, causes of action and liabilities of any and every nature whatsoever … (regardless of cause or of any concurrent or contributing fault or negligence of [indemnitee])").

In sum, the Complaint reflects that Hil-Tech seeks indemnity for its own alleged negligence and strict liability that were settled in the Oklahoma Suit. *See* Dkt. 84 ¶ 4.10. The basis for its indemnity demand triggers the express negligence rule. Section 9.1 lacks explicit language affirmatively requiring Seaboard to indemnify Hil-Tech for Hil-Tech's own negligence or strict liability. Section 9.1 is therefore unenforceable.

## II.   Hil-Tech's allegations are insufficient to overcome the express negligence rule.

Hil-Tech alternatively asserts that binding precedent recognizes a defense to the fair notice doctrine. According to Hil-Tech, a party's actual notice or knowledge of the indemnity provision, or both, can override the conspicuousness *and* express negligence requirements. *See* Dkt. 91 ¶ 1.4.

Seaboard responds that the actual knowledge exception does not apply to the express negligence rule. *See* Dkt. 92 at 3. In the alternative, Seaboard maintains that Hil-Tech's allegations do not plausibly indicate that Seaboard had actual notice or knowledge that Section 9.1 extends to negligence and strict liability. *Id.* at 3-4. These contentions are addressed in turn.

### A.   Decisions addressing actual knowledge as a potential defense to the express negligence rule

Whether and to what extent an indemnitor's actual knowledge or actual notice can overcome the express negligence rule has spawned a split among

the Texas intermediate courts of appeals.[4]  The debate surrounds a footnote in the Texas Supreme Court's opinion in *Dresser*, 853 S.W.2d at 508 n.2.  As Hil-Tech emphasizes, Dkt. 91 ¶ 4.3, the footnote states: "The fair notice requirements are not applicable when the indemnitee establishes that the indemnitor possessed actual notice or knowledge of the indemnity agreement." *Dresser*, 853 S.W.2d at 508 n.2.

*Dresser*, however, made this observation only in dicta.  There, the Court invalidated an exculpatory provision for lack of conspicuousness, finding it unnecessary to address whether it satisfied the express negligence rule.  *See Dresser*, 853 S.W.2d at 510 & n.5.  Moreover, *Dresser's* observation about the impact of actual knowledge cited *Cate v. Dover Corp.*, 790 S.W.2d 559, 561 (Tex. 1990).  *See Dresser*, 853 S.W.2d at 508 n.2.  The *Cate* decision, in turn, recognized only that "*inconspicuous* language is immaterial when the

---

[4] *Compare, e.g.*, *Blankenship v. Spectra Energy Corp.*, 2013 WL 4334306, at *5 (Tex. App.—Corpus Christi Aug. 15, 2013, no pet.) (holding that "actual notice does not excuse [a] release's failure to expressly shift the risk of [indemnitee's] negligence"), *and Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 333 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("While actual notice may serve as a substitute for conspicuousness, it may not serve as a substitute for express negligence."), *and Silsbee Hosp., Inc. v. George*, 163 S.W.3d 284, 293 & n.4 (Tex. App.—Beaumont 2005, pet ref'd) (rejecting an actual knowledge exception that would override the "four corners rule" of express negligence), *with Lopez v. Garbage Man, Inc.*, 2011 WL 1259523, at *15 (Tex. App.—Tyler Mar. 31, 2011, no pet.) (concluding that "actual knowledge of [a] release negates the common law fair notice requirements of conspicuousness and the express negligence rule"), *and Mo. Pac. R.R. v. Lely Dev. Corp.*, 86 S.W.3d 787, 791-92 (Tex. App.—Austin 2002, pet. dism'd) (holding that indemnitor "had actual notice and therefore the indemnity clause was not required to pass the fair-notice test").

[indemnitor] has actual knowledge of the disclaimer…" either through the parties' "prior dealings … or by the [indemnitee] specifically bringing the inconspicuous [provision] to the [indemnitor's] attention." 790 S.W.2d at 561 (emphasis added). This language does not address the impact of actual knowledge on the express negligence rule.

Hil-Tech also cites *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004), which parroted *Dresser*'s footnote. But Seaboard argues, Dkt. 92 at 3, and the Court agrees, that *Reyes* applied the actual knowledge exception only to the conspicuousness requirement. The opinion largely addresses whether the fair notice doctrine should apply to a worker's employment benefit agreement with a non-subscriber to the Texas Workers' Compensation Act. *See Reyes*, 134 S.W.3d at 192-93. Answering that question in the affirmative, the Court noted that (1) the employee's waivers did not meet the conspicuousness requirement; and (2) factual disputes about the employee's actual knowledge of the agreement's terms precluded summary judgment on the employer's actual knowledge defense. *See id.* at 194. *Reyes* did not hold that actual knowledge affects the express negligence rule.

On the federal side, the Fifth Circuit has issued three opinions—two published decisions, and the latest being unpublished—applying *Dresser*'s

footnote, in varying degrees.[5]  *See Cleere Drilling Co. v. Dominion Expl. & Prod., Inc.*, 351 F.3d 642, 647 (5th Cir. 2003); *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336 (5th Cir. 2004); *Safeway, Inc. v. PDX, Inc.*, 676 F. App'x 229, 237 (5th Cir. 2017) (per curiam).

Hil-Tech leans heavily on language in *Cleere Drilling*.  *See* Dkt. 89 ¶ 4.2; Dkt. 91 ¶ 4.3; Dkt. 94 ¶ 3.1.  There, the Fifth Circuit stated, based on *Dresser*'s footnote, that "the requirement of fair notice—*both elements*, i.e., express negligence and conspicuousness—is irrelevant in the face of Dominion's actual knowledge of the subject provisions of the Contract."  *Cleere Drilling*, 351 F.3d at 647 (emphasis added).  But the statement about the interplay between actual knowledge and the express negligence component is dicta because the party challenging the provision's enforceability, Dominion, conceded that the provision "meets the 'express negligence' prong" of Texas's fair notice requirement.  *See id.*  The remaining question was whether Dominion knew about the provision, thereby overriding its alleged lack of conspicuousness.  *See*

---

[5] Two other Fifth Circuit decisions mention *Dresser*'s footnote.  *See McGehee v. Certainteed Corp.*, 101 F.3d 1078, 1081 n.11 (5th Cir. 1996); *Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod.*, 7 F.4th 301, 312 n.15 (5th Cir. 2021).  Neither applied an actual knowledge defense to the express negligence rule.  *See Sanchez*, 7 F.4th at 312 n.15 (concluding that the facts "together" showed the "fair notice (or express negligence) doctrine" was satisfied; the provisions explicitly required indemnity for the disputed obligations, they were set off conspicuously in bold and capital typeface, and the indemnitor did not "claim lack of actual knowledge" of its obligations); *McGehee*, 101 F.3d at 1080 n.5 (noting that the express negligence prong of the fair notice doctrine "is not an issue in this case").

*id.* at 647-48.  On that issue, the record reflected that Dominion's agents made and initialed changes to the disputed provisions when negotiating the contract. *See id.* at 648.  This led to the "inescapable ... conclusion that Dominion had actual knowledge of the contents and purposes of" the language obligating Dominion to indemnify the counterparty for its own negligence.  *See id.*

The analysis in *Millennium Petrochemicals*—not cited by Hil-Tech or Seaboard—is ambiguous.  There, the court appeared to use the terms "fair notice requirement" and "express negligence rule" interchangeably, *i.e.*, defining both to require that a release of future negligence be stated "in unambiguous terms within the four corners of the contract," *and* be conspicuous.  *See Millennium Petrochemicals*, 390 F.3d at 345 & n.6.

Against that backdrop, *Millennium Petrochemicals* rejected the indemnitor's contention that "the wording" of the operative indemnity provision failed to satisfy the "fair notice requirement."  *See id.* at 345. Notably, the provision would have satisfied the express negligence component of fair notice, as it explicitly required indemnification for injuries "caused in part by the [indemnitee's] negligence."  *Compare id.* at 338 n.2, *with XL Specialty Ins. Co. v. Kiewit Offshore Services, Ltd.*, 513 F.3d 146, 150, 151 (5th Cir. 2008) (clause requiring subcontractor to indemnify contractor for "any and all claims … whether or not caused in part" by the contractor's negligence "satisfies the fair notice requirement of the express negligence rule").  But the

16

court pivoted to *Dresser*'s footnote before declaring that the indemnitor "had knowledge of the indemnity clause, and that it was conspicuous." *Millennium Petrochemicals*, 390 F.3d at 345. There, the indemnity and liability provisions were the only provisions in a two-page agreement, the indemnitor's president had signed it, and the indemnitor had not asserted it was unaware that the agreement "was obligating them to indemnify Millennium for even its own negligence." *Id.* For this reason, the court concluded that the agreement "does meet the 'fair notice requirement' and 'express negligence rule.'" *Id.*

On the one hand, *Millennium Petrochemicals*'s initial framing of the issue as a challenge to the provision's "wording" arguably suggests that the indemnitor's knowledge of the obligation was enough to overcome the express negligence rule. But the court appeared to use the terms "fair notice" and "express negligence" interchangeably, to include the conspicuousness requirement. Moreover, the court explicitly referenced and addressed the conspicuousness prong of the test. A better reading of *Millenium Petrochemicals* therefore indicates that the indemnitor's undisputed knowledge about the existence and scope of the indemnity obligation provided an alternative basis for rejecting its claimed lack of conspicuousness.

Indeed, the Fifth Circuit's most recent on-point decision, albeit unpublished, clarifies the scope of *Cleere Drilling* and *Millennium Petrochemicals*—as well as *Dresser* itself. *See Safeway*, 676 F. App'x at 237.

17

Citing all three authorities, the *Safeway* court declared that "[a]lthough both the Supreme Court of Texas and our court have suggested that there may be an actual knowledge exception to the express negligence rule, *neither has so held*." *Id.* at 237 & nn.24, 25 (emphasis added). Notably, the court further observed that "an actual knowledge exception appears inconsistent with the express negligence rule's extremely limited text-based inquiry." *Id.* at 237 & n.27 (citing *DDD Energy, Inc. v. Veritas DGC Land, Inc.*, 60 S.W.3d 880, 885 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding "the fact that Veritas had actual notice of the indemnity and risk allocation provisions of the agreement cannot create a risk shifting provision where none exists")). Ultimately, *Safeway* declined to resolve the issue. *See id.* at 237.

Nonetheless, *Safeway*'s analysis of the actual knowledge defense is compelling because it synthesizes the principles underlying both the defense and the express negligence rule itself. As *Safeway* explains, "to the extent there is an actual knowledge exception to the express negligence rule, such knowledge must be of *the fact that the indemnitee's negligence or strict liability is included* in the indemnity obligation." *Id.* (emphasis added). After all, "the purpose of the express negligence rule is to confirm that those on the hook for another party's negligence are fully aware of the *extent* of that obligation; an understanding merely that there is *some* obligation is not a valid alternative." *Id.* at 238. The court thus rejected the indemnitee's assertion that the

18

indemnitor's "acknowledgement of some general indemnity obligation"—as opposed to awareness of the obligation to indemnify for the other party's negligence—sufficed to overcome the express negligence rule. *See id.*

### B.   Hil-Tech has not plausibly alleged that Seaboard knew it was obligated to indemnify for Hil-Tech's own negligence or strict liability.

Like the Fifth Circuit's *Safeway* decision, the Court concludes that neither *Dresser*, *Cleere Drilling*, nor *Millennium Petrochemicals* holds that actual knowledge overrides the express negligence rule.   And like the indemnitee's argument in *Safeway*, Hil-Tech's allegations—even taken as true—do not show that Seaboard had the requisite knowledge to satisfy the actual notice or knowledge exception, were such a defense cognizable.

Here, the Complaint suggests that Hil-Tech sent to Seaboard a copy of its Terms and Conditions that contain the indemnity provision, Section 9.1, and that those Terms and Conditions were "incorporated into the purchase order ...."[6]   Dkt. 84 ¶¶ 5.10, 5.11.   Hil-Tech has alleged no facts indicating that Seaboard knew that Section 9.1 would obligate it to indemnify Hil-Tech's own negligence or strict liability.   *See Safeway*, 676 F. App'x at 238.   Merely receiving or agreeing to the Terms and Conditions, generally, cannot nullify the express negligence rule; otherwise, the exception would "swallow the

---

[6] Although Seaboard disputes these allegations, Dkt. 85 at 3 n.3; Dkt. 93 at 4-5, they must be taken as true at this stage.

rule ....” *See Am. Home Shield Corp. v. Lahorgue*, 201 S.W.3d 181, 186 (Tex. App.—Dallas 2006, pet. denied) (applying this reasoning when concluding that indemnitor did not have actual knowledge of an inconspicuous indemnity provision).   Accordingly, the Court should grant Seaboard's Rule 12(b)(6) motion to dismiss the indemnity claim.

## III.   Hil-Tech's proposed amendment is futile, and its requests for discovery or delay are foreclosed.

Hil-Tech's further requests for leave to amend its Complaint or to forestall a ruling on Seaboard's motion to dismiss, pending discovery, are denied.  *See* Dkt. 89 (Hil-Tech's motion for extension to respond to Rule 12(b)(6) motion, alleging need for discovery); Dkt. 90 (Hil-Tech's motion for leave to amend); Dkt. 94 (combined reply in support of these motions).

Generally, leave to amend a pleading "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But "[t]he trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010).

Hil-Tech's proposed pleading reflects that amendment would be futile. The only new allegation asserts that "Seaboard had actual notice and/or knowledge of the *terms and conditions* provided in connection with the sale" of the centrifuge, "including the indemnity provision ....”   Dkt. 90-1 ¶ 5.12

(emphasis added).   As concluded *supra*, Part II.A, however, merely knowing "there is *some* [indemnity] obligation" does not suffice.   *See Safeway*, 676 F. App'x at 238.   There is still no allegation that Seaboard was "fully aware of the *extent* of that obligation" to indemnify Hil-Tech for Hil-Tech's negligence or strict liability.   *See id.*   The proposed pleading therefore provides no plausible basis for overcoming the express negligence rule.   Accordingly, the Court denies Hil-Tech's motion for leave to amend.

For similar reasons, Hil-Tech's request to defer resolution of the motion to dismiss pending discovery is unjustified.   To move forward with the case, Hil-Tech must *first* allege sufficient facts to state a plausible claim.   *See Lormand*, 565 F.3d at 257 (complaint must allege sufficient facts "to raise a reasonable hope or expectation ... that discovery will reveal relevant evidence of each element of a claim").   Yet even Hil-Tech's proposed pleading fails to overcome the express negligence rule.   Hil-Tech is not entitled to conduct discovery to explore its deficient allegations.   *See Doe v. Harrell*, 841 F. App'x 663, 671-72 (5th Cir. 2021) (affirming denial of discovery, based on *Twombly*, 550 U.S. at 559, and *Iqbal*, 556 U.S. at 686, where plaintiff "failed to satisfy his pleading obligations").   Hil-Tech's request for an open-ended extension pending discovery is denied.

## Recommendation and Orders

For the foregoing reasons, it is **RECOMMENDED** that Defendant Seaboard Foods Service, Inc.'s motion to dismiss (Dkt. 85) be **GRANTED**. It is further **ORDERED** that Plaintiff Hil-Tech, LLC d/b/a GTech USA's motions for extension of time (Dkt. 89) and leave to amend (Dkt. 90) are **DENIED.**

Hil-Tech's claims against Defendant Shree Mahalaxmi Industries remain pending.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on October 27, 2023, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge

22